So we'll hear the Benjamin case. Good morning, Your Honors, and may it please the Court, my name is John Siretta for Appellant Ezra Benjamin. Mr. Benjamin appeals from the grant of summary judgment for Dr. Pillai, a prison physician, on both his Eighth Amendment claim and his First Amendment retaliation claim. I'd like to focus primarily on the Eighth Amendment claim in my few minutes today. To establish his Eighth Amendment claim, Mr. Benjamin had to show two things. First, that the deprivation of medical care was, in objective terms, sufficiently serious. And second, that Dr. Pillai was sufficiently culpable, that he was at least subjectively reckless, as the cases say. We submit there are fact questions on these issues that should have presented summary judgment. From the time that Mr. Benjamin arrived at MacDougall Correctional in June 2016, through September 1st, and indeed, even beyond, he was suffering from severe sciatic nerve pain. And what would eventually be diagnosed as diffuse disc bulges and spinal stenosis. All this time- Assuming this was a significant condition, what is the evidence in the record of deliberate indifference? So I think there are several things. First, the initial appointment, the appointment with Dr. Pillai on July 15th. There's evidence in the record, in the affidavit submitted by Mr. Benjamin, that at this first meeting, he uses, Dr. Pillai refers to Mr. Benjamin as a pain in the posterior- He calls him a pain in the ass, but he treats him anyway. I mean, is that mere fact that he calls him a pain in the ass? Maybe he was a pain in the ass, but the point is, is there any evidence that Dr. Pillai didn't treat him that day? Well, so here's how it goes. He does call him that. He threatens not to treat him. He writes an approximate prescription that is PRM. Now, the policy is that that was not going to be filled. We think that Dr. Pillai knew that, or at the very least should have known that. And then- Is that a recent change in the policy? It was relatively recent, but even if- Does the record indicate how recent? I don't have it on my finger if it's how recent, but I do think there is some indication that it was a relatively recent change. So even if that in itself is not enough to show subjective recklessness, I think what happens next is, and that is, the prescription doesn't get filled. We know that by August 10th, at the latest, the prescription is back to the MD, and I think a reasonable jury could say that that MD had to have been Dr. Pillai who issued it. And then for another 20 days and more- Based on what? Based on what could a reasonable jury conclude that it was also Dr. Pillai on that day? If there's- There's nothing in the record other than that he had done it before? I think the combination of the fact that it's Dr. Pillai, who is the July 15th appointment with, it's Dr. Pillai on August 30th, and on September 1st, when finally the lieutenant for the DOC brings him in, Dr. Pillai handles it then. I think it's reasonable based on the fact that it's always Dr. Pillai on the two other instances that are bracketing, that it's, you know, the person who's getting the file is Dr. Pillai. So on August 10th, we think there's evidence he was aware of it, and nothing happens. And I think it's also appropriate that nothing happens until that DOC lieutenant intervenes. So it takes a third person coming in in order to kind of guilt Dr. Pillai to provide the treatment. So let me ask you about the objective problem. Let's take each of the things you're complaining about here. The delay in the x-ray, right, was approximately what, five weeks? That's right. Okay. The x-ray turned out to be unremarkable, correct? Right, that's correct, yeah. So how could there be an Eighth Amendment violation for a delay in an x-ray when the x-ray was taken that was unremarkable? I think you conceded in your opening brief that there was no exacerbation of his condition from the delay in the x-ray, right? I mean, I think that's fair, that's fair. How can it be an Eighth Amendment violation to delay an x-ray for five weeks when he gets the x-ray, it's unremarkable? I think you have to take the x-ray and menoproxen together. We'll get to the neproxen in a second. Let's just focus on the x-rays. Assuming, put the neproxen aside for a moment. I know you want to take them together, but I want to take them, okay? Can that possibly be an Eighth Amendment violation, to delay an x-ray that's unremarkable for five weeks? Not in isolation, but I think if I can bring the neproxen back in, the combined fact that both the neproxen and the x-ray are not provided. And the neproxen, I think, again, you said a little bit differently in your reply, but in your opening brief, you said there was really no evidence that the pain was worsened by the denial of the neproxen. It didn't make the pain worse, it didn't treat the pain, I understand that argument, but there's no indication that it made it worse, right? I think that's fair, but I don't think that that can be the end of the, you know, that is what the district court focused on. I understand that, but it's not the end of the day. But it didn't make it worse, didn't make the pain worse, right? That's right, but it persisted. It persisted, but again, similar to the x-ray, when he got the neproxen, there are multiple points in the record where he says it's not working, right? He doesn't want it anymore. So how can that be an Eighth Amendment violation if he was denied a pain medication for five or six weeks that ultimately didn't help him, how can that be an Eighth Amendment violation? You have two different things, an x-ray and a pain medication. The x-ray was unremarkable and the pain medication didn't work. So separately or in combination, how is that an Eighth Amendment violation objectively? I think that would be the end of the day if that were the end of the story and Mr. Benjamin were still suffering today. But it wasn't, because what happened, as soon as he got the neproxen and then the x-ray was ordered, and it very quickly, they realized that more needed to be done. And eventually there was an MRI. I don't think a neurosurgical analysis was needed, right? That was denied. Wasn't it by, not by this doctor, by other doctors saying, we don't even think you need to have a neurosurgeon look at this, right? What he eventually got was the steroid injection in January after he got the MRI. And so they realized that the neproxen was not working. They continued to treat, and eventually he did get something effective, which was that steroid injection. So I think the... I gather the argument is that if he had gotten the x-ray sooner, they would have realized sooner that the stuff wasn't working, and they might have gone to the MRI and the steroid treatment faster, and that might have saved him some time of pain. That's exactly right. What we have here is at least a six or seven week dead period, where nothing is happening and where he's not getting any treatment, and so... There's evidence in the record that once he got that steroid injection, he never had any pain after that? Is that what you're telling me? No, but there is evidence in the record that the steroid injection was an effective treatment, that that, unlike the neproxen... How long? I'm not sure off the top of my head. I think, you know, at least it may not have completely addressed the issue, but it did reduce the pain. The doctor had not prescribed the neproxen at all, and he just prescribed what he also did, Tylenol, and said, you know what? He said he also had back exercises, weight loss. If he had said initially in July, you know what? I want you to try to lose weight, I want you to do these exercises, and we're going to give you Tylenol for five or six weeks before we start the neproxen. Would that have been an Eighth Amendment violation? No, that would not have been an Eighth Amendment violation, but I think it was an Eighth Amendment violation to recklessly withhold the neproxen because it was the failure. I think it was only when that neproxen failed that the doctors started to realize they were dealing with something that required a more serious intervention. And so it was a necessary step in order to get that steroid injection to sort of have the trial and error process of, in September, neproxen fails, okay, let's move on to something else, and eventually they go to the steroid injection. So delaying that for six weeks did exacerbate the pain, did lead to more pain for Mr. Benjamin. Thank you. You have two minutes for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court. My name is Assistant Attorney General Janelle Medeiros, and I represent the defendant appellee in this matter, Dr. Pillai. The judgment of the trial court should be affirmed for several reasons. First, I would like to direct the Court's attention to the joint appendix at page 080, which is Dr. Pillai's note on the very first day that he saw the plaintiff, Mr. Benjamin, in this case. And that note is indicative of the fact that plaintiff was never actually deprived of treatment in this case. As Justice Bianco pointed out, from day one, Dr. Pillai prescribed a number of different forms of treatment. In that note on JA080, it's evident that Dr. Pillai first performed a physical evaluation of Mr. Benjamin. He physically examined him to see what physical signs... What was the cause of the delay in getting the x-ray? There was a delay, right, in the x-ray? Well, there was a delay from the time that the order was put in to when the x-ray was actually completed. It's not clear from the record what the cause of the delay was. What is clear from the record is that Dr. Pillai was not aware that there was any unusual delay in the x-ray being completed until September 1st. And when he was made aware of that issue, it was rectified immediately, and the plaintiff underwent the x-ray seven days later. Is there any evidence in the record that he played any role in the scheduling of x-rays? No, there's not. And the only evidence in the record is that an x-ray technician performed the x-ray. Dr. Pillai doesn't perform the x-ray. He's not involved in scheduling it necessarily. He doesn't actually perform the x-ray that's left up to the x-ray technicians. And there is evidence in the record to suggest that this delay isn't actually that unusual. In the Connecticut DOC, Dr. Pillai noted in his affidavit that that's not that unusually long of a delay. The fundamental argument, as you heard, is that if an inmate is in extreme pain, even if it's not being exacerbated and the jail has the ability to treat it with some type of medication, that it can be deliberate and of difference to allow an inmate to continue in pain, even though it can be alleviated. So what's your response to that? Well, under this court's precedent in Smith, it's not simply the question of whether the plaintiff remained in pain throughout the entire time period. It's a factually specific question that looks not just at the level of pain, but also looks at the underlying condition, how serious it is in the abstract, combined with these other factors such as the existence of adverse medical effects, like if the condition were exacerbated or if the prognosis for effective treatment were diminished. Well, but if instead of eight weeks of pain, it could have been four weeks of pain with that state of claim, assuming the pain were serious and having had these back issues, I know it's excruciating pain. Again, Your Honor, under Smith, it's a factor analysis, so it looks at a variety of different things in this case. Certainly there may be a certain... In other words, the argument is that instead of an eight-week delay in getting the X-ray, if it had been a three-week delay, even though it was inconclusive, that might have led to scheduling an MRI sooner and resorting to steroid injection sooner, and that might have saved, you know, five weeks of excruciating pain. Is that a fair argument? It may be. In some other case, that may be the circumstances. Here, the record does not support that conclusion for several reasons. First, because it's not at all clear from the record that the epidural steroidal injections ever actually relieved Mr. Benjamin's pain. In fact, at oral argument, more than a year after the epidural steroidal injections and the X-ray and the MRI and the five different types of pain medication and the two muscle relaxants and all of the other recommendations that Dr. Pillai made, the plaintiff was still complaining of serious pain, and at oral argument he stated that the epidural steroidal injections were not at all effective, and that's in the record at JA239. In fact, at oral argument, the plaintiff noted that one of the first recommendations that Dr. Pillai made, which did constitute treatment, which is back exercises, stretches, functional exercises, which would address the underlying cause of the pain, those were the only things that were effective in alleviating his pain. He also noted that he specifically wanted opiates or THC pills. That was the only thing that the plaintiff believed would alleviate his pain. So ultimately, this really comes down to a disagreement about what type of care was appropriate here, and that's not a constitutional issue. The plaintiff himself even noted at oral argument that this was a disagreement over care. It was a disagreement over what type of pain medication would be effective. With regard to the subjective prong, the plaintiff's argument seems to amount to Dr. Pillai should have known about this policy. Dr. Pillai ought to have known that the prescription wouldn't be filled. But this is not a negligence claim. We're not talking about should have known or ought have known. We're talking about cruel and unusual punishment, and the only relevant question is what Dr. Pillai actually knew from July 15th to September 1st. And there's no evidence in the record that would create a disputed fact about whether Dr. Pillai was aware that there was an issue with the x-ray or an issue with the naproxen. So for that reason, even if the court could find that the plaintiff established that his delay was sufficiently serious, the plaintiff couldn't succeed on the subjective prong as well. Just very briefly with regard to the plaintiff's retaliation claim, as Judge Meyer correctly found below, the retaliation claim fails both because there was no adverse action, as the plaintiff wasn't actually denied medical care. As previously noted, the plaintiff was provided medical care from day one. Whether he agreed with the functional exercises, the naproxen prescription, the recommendation to lose weight isn't relevant. That all still counts as treatment. And also the retaliation claim fails because there's just no evidence in the record that would create a disputed fact about causation or intent here. Ultimately, the record before Judge Meyer and before the court today is one of appropriate and reasonable care provided to a patient who just disagreed with his doctor's course of treatment. It's not a record that demonstrates deliberate indifference or retaliation. For all the foregoing reasons, the defendant respectfully requests that this court affirm the judgment of this district court. Thank you. We'll hear the rebuttal. Just two very quick points, Your Honor. First, the district court in its opinion did say that it thought that there were genuine issues of material fact on this being a serious enough medical condition for Eighth Amendment purposes. And I think that was right. I think there's evidence in the record that there was tingling, that it affected Mr. Benjamin at night, and that this was very serious pain. And so at least on that aspect of the district court's decision, I think that was correct and the court should agree. The second point I just wanted to make is on the steroid injection. And I don't think it would be appropriate up here at the Court of Appeals or even before the district court to take a statement and oral argument a year later as somehow foreclosing this argument that because he was still complaining about pain and the steroid may not have been as effective a year later, that this would foreclose any claim of delay in pain management as an Eighth Amendment violation. So I don't think that that, if that's the response, is sufficient to end the case or to grant summary judgment. The district court's opinion stopped at Naproxen. You know, Naproxen didn't work, but there was more to the story, and the delay in providing pain management stated an Eighth Amendment claim. Unless the court has further questions, thank you very much. Thank you, and thanks to Day-Pitney for taking on the case. We'll reserve decision. We will take a short recess. Quiet stand and reserve. Thank you. Are we up next at the park? I'm sorry, I didn't hear you. Thank you. Thank you. Thank you. Thank you. Thank you.  Judges, the United States Court of Appeals to the Second Circuit. Please be seated. Okay, we will continue with the rest of the calendar. We'll hear from